| 1 | **UNITED STATES DISTRICT COURT** |
| | **EASTERN DISTRICT OF MICHIGAN** |
| 2 | **SOUTHERN DIVISION** |

3    **THE UNITED STATES OF AMERICA,**

4                          Plaintiff,          **Case No. 11-20129-8**
            **-v-**

5

6    **VINCENT WITORT, D-8,**

                         Defendant.
7    _____/

8                         **MOTION HEARING**

9              BEFORE THE HONORABLE **ROBERT H. CLELAND**
                   United States District Judge
10           Theodore Levin United States Courthouse
                   231 West Lafayette Boulevard
11                      Detroit, Michigan
                       **July 9, 2014**
12

      **APPEARANCES:**
13

      FOR THE PLAINTIFF:    ERIC STRAUS
14                          U.S. Attorney's Office
                            211 W. Fort Street
15                          Suite 2001
                            Detroit, MI 48226
16

      FOR THE DEFENDANT:    KIMBERLY W. STOUT
17                          Kimberly W. Stout, PC
                            370 East Maple Road
18                          Floor 3
                            Birmingham, MI 48009
19

      ALSO PRESENT:         BYRON H. PITTS
20                          PHILLIP COMORSKI

21


22
              **To Obtain a Certified Transcript Contact:**
23     Christin E. Russell, RMR, CRR, FCRR, CSR - (248) 420-2720
               Proceedings produced by mechanical stenography.
24        Transcript produced by computer-aided Transcription.

25

# TABLE OF CONTENTS

Hearing                                              Page

  Motion Hearing                                      5

Exhibits:
              (None Offered.)

  CERTIFICATE OF REPORTER                             25

```
 1  Detroit, Michigan
 2  July 9, 2014
 3  2:41 p.m.
 4                   *            *            *
 5          (Conference in chambers; Defendant not present.)
 6                   *            *            *
 7          THE COURT:  Mr. Straus, good afternoon.  Who else do
 8  we have here?  Ms. Stout.
 9          MS. STOUT:  Judge, Kim Stout.
10          THE COURT:  Good morning.
11          MS. STOUT:  This is Mr. Byron Pitts.
12          THE COURT:  Yes.
13          MS. STOUT:  And his co-counsel, Phillip Comorski.
14          And this, as you know, is Michael Naughton who is our
15  technical expert.  The reason I brought him is if you had
16  questions, he actually attended a couple visits of my client
17  with me.  So he is available to answer any -- I just didn't
18  know what to expect, your Honor, including the fact that he
19  helped him with the iPad, transferred information, as well as
20  my offer to withdraw in front of Mr. Naughton, which the client
21  didn't want me to do.
22          THE COURT:  Okay.  Well, the reason that we were in
23  court at all, though the record should reflect that we are in a
24  conference room off the courtroom here, out of the presence of
25  the defendant, purely at the request of counsel, collectively,
```

MOTION HEARING - 7/9/2014                                    4

1    I understood, I certainly want to proceed on the record here.

2    I'm a little bit uncertain, at least about proceeding in the

3    absence of the defendant who is waiting I think in custody in

4    the courtroom.  I was simply told that counsel wanted to

5    briefly meet with me before we, before we proceeded in court on

6    the record.

7          And the reason that we are here at all is because of

8    this proposed stipulation of substitution of counsel, more or

9    less on the eve of trial, after two years of preparation, which

10   is an extraordinary thing to request.  And I wanted to hear the

11   details of that before I approved it, being satisfied as I am

12   Ms. Stout's performance thus far.

13         MS. STOUT:  Thank you, your Honor.

14         THE COURT:  So is there some preliminary matter that

15   we need to discuss?

16         MR. PITTS:  Just a, a caveat to going forward.  I just

17   wanted to let -- for the record, Byron Pitts.

18         I understand the lateness of our request to come into

19   the case and the potential issues it might bring up if we were

20   allowed in or not allowed in.

21         In speaking with Ms. Stout, I just wanted to let the

22   Court know that if, we would have no problem working with Ms.

23   Stout, if the Court saw fit to allow us in the case and saw fit

24   to keep her in the case.  We have been -- that's all I wanted

25   to say.  I'm not sure if that's even on the radar of the Court.

```
 1    But I wanted to let the Court know that is something that
 2    amongst ourselves, we would not have a problem with, ultimately
 3    understanding that the final decision is yours.  But that's
 4    all.  That's it.
 5              THE COURT:  Okay.  Well, of course that is a matter to
 6    be -- that could be I think as easily repeated and probably
 7    should be repeated --
 8              MS. STOUT:  Okay.
 9              THE COURT:  -- in the presence of defendant.  It
10    wouldn't come as a surprise to him, in any event, I would
11    imagine.
12              I think we should just assemble in court and we will
13    have a discussion of the predicates of this, of this request
14    and the advantages and disadvantages.  And I'll see what I make
15    of it.
16              I'm entirely uncertain fundamentally as I indicated
17    earlier, because of the lateness of the hour.  But let's
18    reassemble in court, and we'll just terminate this record for
19    the moment.  And I'll have everybody have a chance to make a
20    statement, as appropriate, when we reassemble in court.
21              Thank you.
22              (Conference in chambers concluded, 2:45 p.m.)
23              *              *              *
24              (Call to Order of the Court; all parties present.)
25              THE CLERK:  Calling case No. 11-20129.  The United
```

MOTION HEARING - 7/9/2014                                          6

1   States of America vs. Vincent John Witort.  Counsel, please

2   state your appearances for the record.

3            MR. STRAUS:  Good afternoon, your Honor.  On behalf of

4   the United States, Eric Straus, Assistant United States

5   Attorney.

6            MS. STOUT:  Good afternoon.  Kimberly Stout on behalf

7   of Vincent Witort, who is seated to my left.

8            THE COURT:  The matter is -- good afternoon.  The

9   matter is before the Court because of the Court's receipt of

10  the stipulation for substitution of counsel that was presented

11  to me some time ago.

12           The proposal is that Ms. Stout, "shall be relieved

13  from any further responsibility in the above-entitled matter"

14  and that "Byron H. Pitts and Phillip Comorski shall substitute

15  as retained counsels in place of Kimberly Stout."  And Mr.

16  Pitts is here, as well as Mr. Comorski.  And I recognize their

17  presence here as well.

18           The defendant is personally present.  And at the

19  request of counsel, I think Mr. Pitts, we conferred briefly in

20  chambers, although on the record and out of the hearing of the

21  defendant, at which time Mr. Pitts said the only reason that a

22  conference was requested in advance of this hearing was to

23  indicate that, I think the way you put it, Mr. Pitts, was that

24  you would have no problem in working with Ms. Stout if you were

25  permitted to be co-counsel, or something similar to that.  Am I

MOTION HEARING - 7/9/2014

1    correct about that?

2         MR. PITTS:  Essentially, yes, your Honor.

3         THE COURT:  Okay.  Thank you.

4         Ms. Stout has been representing the defendant since

5    what time, Ms. Stout?  The commencement of the indictment?

6         MS. STOUT:  July 2012 I was appointed, your Honor.

7    The first visit with my client was the 1st of August in the

8    Wayne County Jail, of 2012.

9         THE COURT:  About a year.

10        MS. STOUT:  That's two years.

11        THE COURT:  I'm sorry.  How time flies.  Two years.

12        And the volume of material that you've reviewed over

13   that, over that time, amounts to approximately what?

14        MS. STOUT:  Your Honor, I reviewed my records before

15   this hearing and made a few notes.  I have had approximately,

16   and I don't want to be stuck to the exact number, 19 visits at

17   various jails with Mr. Witort, many of which were at Midland

18   County Jail where he is housed with his iPad.  One was at

19   Dickerson, where he was temporarily housed, and several were at

20   Wayne County Jail where was first incarcerated.

21        Two of those meetings were attended by Mr. Michael

22   Naughton, who is here today.  He has been court-appointed

23   technical assistant.  He attended two -- one very recent

24   meeting to make sure the transfer of all my client's notes and

25   comments to me on the iPad were properly placed on my computer

1    so that I had everything and wouldn't miss anything; I didn't

2    trust myself enough to do it myself.  And the first time was

3    back in February of this year, where Mr. Naughton wanted to

4    make sure my client was clear on what he was doing and taught

5    him some new techniques with the iPad so he could review the

6    materials better.  So that is why I brought him.

7         And just so the Court knows that at that meeting back

8    in February, which was seven months ago, the issue of whether,

9    because of Mister -- well, I want to be very careful with the

10   attorney/client privilege, your Honor.  I'm not sure that

11   there's any real waiver.  I'm just going to say that there was

12   some discussions about, you know, him wanting me to stay, if he

13   wanted me to withdraw.

14        As far as my review, I reviewed pretty much all of the

15   25-plus thousand pages that were initially provided.  There is

16   a search technique, so I did not go through them one-by-one.

17        I have searched and searched and searched and I

18   believe reviewed everything that's pertinent.  Obviously in a

19   RICO, you can't say that nothing isn't, but I think the Court

20   understands.

21        Further, we got a new CD with 7,200 pages that I

22   picked up last week and have already perused and found what I

23   felt to be most important to my client.

24        As far as the Jencks, which we have not received yet,

25   which I understand to be 3,500 pages, your Honor, I have had

1    three meetings with the U.S. Attorney, Mr. Straus and Ms.

2    Mohsin.  And I'm not sure if the agent -- yes, and the agent

3    was attendant at some of those, Agent Flemings, because I was

4    provided courtesy of reviewing the Jencks as early as a year

5    ago.  Part of the reason was a request by me, the Government's

6    willingness to be open and understanding that names wouldn't be

7    revealed and they were redacted, that sort of thing.  And also,

8    so that we could logically and reasonably discuss plea, if

9    there's any possibility of a plea negotiation.  So those

10   meetings included plea negotiation conversations, as well as my

11   review of Jencks.  So I really have a handle on this case, to

12   say the least.

13        I've also brought with me, because I know my client is

14   a little concerned about communication, this is one of two

15   files of correspondence and e-mails between my client, his

16   brother, Paul Witort, who you had met, your Honor, because he

17   testified at the bond hearing, the older gentleman, my constant

18   communication through what my client told me was the liaison,

19   who was Paul Witort.

20        Obviously, nothing about the details of discovery were

21   discussed, your Honor, because it's protected, but just

22   procedure, parameters, in case my client -- because my client

23   talked to him regularly.  And some of that, of course, is

24   e-mail between counsel and the Government, not just the client.

25   But there's two of those, and there's a lot of it.

```
 1              So I've also learned the systems, you know, that Emma
 2    has provided us.  I'm having a little trouble with Case Manage.
 3    And I'm going to have another instruction on that, if need be.
 4    Though, I may not be.
 5              THE COURT:  That's a program that you're talking?
 6              MS. STOUT:  That's a program that helps us, she has
 7    all -- she will have all 35,000 pages on that.  Right now,
 8    there should be the 25 plus the 72.  Even though the 25 and 72
 9    are already searchable, on Case Manage, it's even a more
10    powerful way to search because it itemizes things, warrants,
11    you know, lab reports, that way, making it a lot easier.  And
12    again, I hope I'm not waiving -- I don't want to waive anything
13    that -- I don't think that's anything to be concerned about.
14              THE COURT:  No.
15              MS. STOUT:  Okay.  So in terms of my preparation, your
16    Honor, I have invested a lot in this case.  And as you know --
17              THE COURT:  About roughly how many hours?  Have you
18    totalled that up?
19              MS. STOUT:  I didn't total the hour.  I've kept -- I
20    just recently went over my budget.  My budget was $35,000, your
21    Honor, that I proposed to this Court.  I know I spoke with Mr.
22    Rants at great length when I developed that budget.  I know
23    some attorneys are right around there, and some attorneys are
24    more.  I don't know their details.
25              I have stuck within that budget that was meant for a
```

1   year for nearly two years.  Now, I am over it.  But part of the

2   reason is because trial is at our heels.  And I have set out a

3   lot of time to get ready for this case, your Honor.  So that's

4   why I had the time to go over these CDs recently and, you know,

5   that was part of my plan in my mind.  That's how -- you know,

6   I'm a private practice.  It's just me.  So I turned away some

7   business in order to clear this, to be ready and available for

8   this.

9          I also discussed an issue you had brought up at one of

10  the pretrial about having buddies or joint defense agreements

11  didn't go over too well, but having buddies, if you're going to

12  be late, that sort of thing.  And I talked about that with

13  Jerry Sabbota and me, and Patty Maceroni kind of, you know,

14  watching out for each other, that sort of thing.

15         So finally, your Honor, I got so far as to prepare my

16  closing argument, because I learned from Mr. Fink early on,

17  back 29 years ago that, you know, if you want to understand,

18  you have to understand the case to start developing your

19  closing argument so you know where you've got to get to if you

20  want to be able to argue that.  So am I prepared?  Yes, your

21  Honor, I am very prepared.

22         THE COURT:  There's, there's no indication of any

23  conflict that's come to my attention.

24         MS. STOUT:  There -- conflict of interest?  Or

25  conflict with my client?

1      THE COURT:  The kind of conflict that sometimes

2  arises -- no, not conflict of interest.  A conflict between

3  counsel and client, so-called irreconcilable differences, the

4  kind of language that we used to hear before the era of

5  no-fault divorces.  Irreconcilable differences that have lead

6  to a complete breakdown of communication, such that counsel

7  cannot effectively represent the client and things of that

8  sort.  No hint of that throughout any of these proceedings with

9  respect to you and Mr. Witort, that I'm aware of.

10      Is there -- have I missed something in that regard?

11      MS. STOUT:  To be completely honest with you, your

12  Honor, you know, my client and I have had some difficulties,

13  which is part of the reason Mr. Naughton is here.  And again,

14  you know, he's upset.  Obviously, he's been incarcerated for

15  two years and misses his family, and so we've had a few words.

16  And he doesn't always think that my strategy, which I've shared

17  with him is, is maybe the same strategy he wants to use, for

18  instance, in certain stipulations and things like that.  I

19  would not say that it's insurmountable by any means.

20      Like I said, I did offer at one point to, not at one

21  point, several points to withdraw, only because he seemed

22  upset.  But as a CJA counsel, and having done this for so long,

23  I generally get along very well with my clients.  But there is

24  occasions where it's a little bit stressed, and that's part of

25  my job, I feel, and I've done my best.  So I did not believe

1   that and was quite surprised to learn of -- I got call from Mr.

2   Pitts out of the blue, quite frankly.  So I know Mr. Pitts is

3   an incredibly competent lawyer.  I have respect for him, but I

4   did not know.

5          THE COURT:  Mr. Pitts, is there anything you want to

6   add to the record?

7          MR. PITTS:  Your Honor, I think with the Court's

8   permission, we'd like to have the opportunity to possible reply

9   to the Government's objection to us getting in the case, if we

10  could respond at that time?

11         THE COURT:  I'm not sure that they've objected

12  exactly.  The Government has suggested to me the standards, and

13  I think those standards are fairly well recognized.  Especially

14  in cases where there's an allegation of a conflict,

15  irreconcilable, or nearly so.

16         The timeliness of the motion to substitute attorneys

17  is significant.  The extent of the conflict, the nature of the

18  conflict, the nature of the lack of communication, if there's

19  any suggested -- none has been suggested thus far to me.  But

20  the public has an interest in the prompt and efficient

21  administration of justice.  And I think that there should be a

22  presumption in favor of maintaining the status quo, unless

23  there's a reason to deviate from it.  I think we should not be,

24  as a general matter, jumping around from attorney to attorney

25  in the process of the case, in any case needlessly.

```
 1              A fair amount of public funds have been expended in
 2     providing representation in preparation for Mr. Witort over the
 3     past couple of years, beyond $40,000 at this point.
 4              One question that arises in my mind is whether, in the
 5     prospect of retaining counsel, he apparently has found
 6     resources beyond the $500 a month Social Security benefit that
 7     he claimed under oath in applying for publicly-funded counsel
 8     originally.  So apparently he has located other funds to hire
 9     counsel now, to retain substitute counsel.  And I wonder aloud
10     in that regard whether he is prepared to reimburse the Court
11     for the roughly $40,000 of funds that have already been
12     expended in providing a defense for him.
13              What do you think about that, Mr. Pitts?
14              MR. COMORSKI:  Your Honor, Phillip Comorski.
15              THE COURT:  Are you proposed first chair then, Mr.
16     Comorski?
17              MR. COMORSKI:  No.  I was just going to respond to the
18     Court's concerns about public funds being reimbursed.
19              I just want the Court to be aware that third parties
20     on behalf of Mr. Witort reached out to us and hired us,
21     potentially sought to hire us.  It was not Mr. Witort on his
22     own.
23              THE COURT:  So did that third party propose that the
24     public funds that have been expended be reimbursed in
25     satisfaction of Ms. Stout's performance thus far?
```

1          MR. COMORSKI:  No.

2          THE COURT:  So that's not a first step that was

3   suggested?

4          MR. COMORSKI:  No.

5          THE COURT:  Okay.  So, Mr. Pitts, do you think you can

6   prepare a defense and do, in the course of perhaps 60 days,

7   what Ms. Stout has taken two years to accomplish?

8          MR. PITTS:  May it please the Court, your Honor.

9   Certainly, we believe we can.  There will be two of us working

10  on the case, if Mr. Comorski and I are allowed in.  We are

11  familiar with the volume.  Obviously because there's a

12  protective order, we don't know the details of what's in the

13  discovery material, but we are aware of the volume and we're

14  prepared to go forward.

15         THE COURT:  Are you aware of any suggestion of

16  conflict between present counsel that rises to a recognizable

17  level, Mr. Pitts?

18         MR. PITTS:  Your Honor, in light of the fact that,

19  without getting into conversations I've had with Mr. Witort, I

20  have been made aware that he is now casting no aspersions on

21  Ms. Stout.  I know she's an excellent attorney, but he is

22  unhappy with some of the things that have been done by present

23  counsel.  So I'm not sure if that rises -- I know that's an

24  issue with him and her.

25             I am not really in a position to intelligently

1    analyze, you know, whether or not -- because I wasn't there, I

2    wasn't in court, and I've just gotten here, whether or not

3    everything is -- I'm not **intelligently** analyze the issues, the

4    strengths and merits of the complaints, but I know he's unhappy

5    about what's gone on.

6          He's indicated through other members of his circle,

7    not him, he's indicated he would like to retain somebody else.

8    Other members of his circle, friends and family have gathered

9    the funds for us.  So whether or not that rises to a level of

10   conflict sufficient for the Court, I am not -- I don't know.

11         THE COURT:  What, to the both of you, I ask what role

12   does the Court play and what obligation does a proposed

13   substitute counsel have to reveal enough to the judicial

14   tribunal to ensure that the source of funds for the

15   representation, not being the defendant's own funds, do not in

16   and of themselves indicate a conflict of interest or other

17   similar ethical problem?  What obligation do counsel have and

18   what obligation does the Court have?  What do we know about

19   that?

20         Mr. Comorski?

21         MR. COMORSKI:  I guess I don't understand the

22   question, your Honor.  Are you asking --

23         THE COURT:  How is it that the Court can be assured,

24   let me put it more bluntly, that the funds are derived from

25   someone who has an interest adverse to that of Mr. Witort?

```
 1                 MR. COMORSKI:  Oh, I see.  I suppose we could get
 2    affidavits from the persons involved and submit them to the
 3    Court for the Court's review.  That would be one option, of
 4    course.
 5                 THE COURT:  Perhaps.  What does the law say about any
 6    obligation that counsel may have or that the Court may have to
 7    look into such matters?
 8                 MR. COMORSKI:  I'm not aware of any such law, your
 9    Honor.
10                 THE COURT:  How many federal capital-level offense
11    defenses have you participated in, Mr. Comorski?
12                 MR. COMORSKI:  Myself?  None.  I've done appellate
13    work.
14                 THE COURT:  And Mr. Pitts, what about you?
15                 MR. PITTS:  If I can, I'm counting.  I'd say about
16    three, your Honor.  I did a federal death penalty case in front
17    of Judge Victoria Roberts.  I'm presently involved in a similar
18    case, a RICO-related motorcycle club case in front of Judge
19    Borman presently.
20                 THE COURT:  When is that going to trial?
21                 MR. PITTS:  January 24th.
22                 THE COURT:  And you have nothing on your schedule
23    between now and then?
24                 MR. PITTS:  I have a trial in Wayne County Circuit
25    Court.  I do have things on my schedule, your Honor, but I'm
```

1    prepared -- I don't have any trials set other than a trial set

2    in July.

3              THE COURT:  This is July.

4              MR. PITTS:  Understood.  I have another trial in Wayne

5    County Circuit Court set two weeks from now, capital case.  I

6    have a -- no, strike that.  It's not a capital case.

7              I have two trials in this building which are set for

8    trial, which I do not think are going to go.  A case in front

9    of Judge Drain, a narcotic case, I don't think it's going to --

10   I don't think my client is going to go to trial on that.  And

11   another case, which has not -- in front of -- no.  I don't have

12   any other trials set, other than the one in front of Judge

13   Drain, which I do not believe is going to go forward, and a

14   capital case in Wayne County Circuit Court set in a couple of

15   weeks.  Strike that.  If I said "capital" it's not capital

16   case.

17             THE COURT:  Okay.  By capital in Michigan, what we

18   mean is life imprisonment max.

19             MR. PITTS:  Understood, your Honor.

20             THE COURT:  All right.  Thank you.  At least that's

21   what I --

22             MR. PITTS:  I represented this individual on a capital

23   case, and this is something else.

24             THE COURT:  All right.  Okay.  Thank you.

25             Mr. Straus, for the Government, you filed a brief to

 1    assist the Court.  Does the Government actually have a position

 2    in this regard?

 3          MR. STRAUS:  Obviously, after hearing Ms. Stout,

 4    there's obviously far more here in terms of what she has done

 5    on behalf of Mr. Witort than, you know, the prosecution can

 6    imagine.  I know that Ms. Stout has met with us several times.

 7          It just strikes the Government that it would almost be

 8    impossible to replicate what she has done thus far to get Mr.

 9    Pitts and his co-counsel to where Ms. Stout is here today.  I

10    find it inconceivable that he could be ready in, in two months.

11    And I think under the case law, in the interest of efficiency,

12    the Court should certainly deny that request for substitution

13    of counsel.

14          I also note, to put on the Court's radar and mentioned

15    it, the authority for seeking reimbursement is 18 USC, Section

16    3006A.  That is the Criminal Justice Act of 1964, subpart (F).

17    And it does not differentiate between the defendant's own funds

18    or funds "on behalf of a person who is furnished

19    representation."

20          If the Court were to require deposit in the Treasury

21    of that 40 some thousand dollars, I'm assuming that whatever

22    the source, and it's -- whatever the source is, it's not an

23    inexhaustible funding source.  I can well imagine at some point

24    in time prior to trial a realization that that source has dried

25    up and we would be back here asking for either new counsel, or

MOTION HEARING - 7/9/2014

1    for the appointment of Mr. Pitts and his co-counsel to be CJA

2    attorneys, and so, or worse yet, new counsel.  So I don't know

3    how -- I just put that on the Court's radar, all of which I

4    think raises some issues, some substantial issues.

5             And I think also, I think the Court is right.  I think

6    there should be some inquiry as to the source of these funds.

7    There is, after all, a forfeiture provision in this particular

8    matter.  It hasn't come up on in the Court's radar because most

9    of the defendants have filed affidavits of indigency, and so

10   there's been no need to conduct, it's not a Nebbia hearing, but

11   it's a hearing akin to that, to determine the source of the

12   funds for the attorney representation, to ensure that they are

13   not illegal funds.  So those are the court -- the Government's

14   observations, your Honor.

15            THE COURT:  Thank you, Mr. Straus.

16            With that, I'm going to ask for a -- I'm going to

17   allow an opportunity, as Mr. Pitts suggested earlier, for him

18   to file a response commensurate with the length of the

19   Government's filing here, which is not specifically in

20   opposition, but now I think with the additional information

21   provided, I interpret as being essentially in opposition to

22   changing horses here in midstream at this time, so close to

23   trial, after the amount of work that Ms. Stout has done.

24            So if the object of the proposed stipulated

25   substitution is still sought, if the goal is still sought, that

```
 1    is to substitute counsel, then I would direct proposed
 2    substitute counsel to file a paper, presumably under seal,
 3    explaining the situation, laying out as specifically as may be
 4    deemed appropriate the funding source information, allaying any
 5    concern that any observer might have to the possibility of
 6    conflict.  Explaining the sufficiency of the funding going
 7    forward to allay the concern that Mr. Straus has mentioned
 8    here, that is, the source of funds becoming exhausted mid-trial
 9    and giving rise to the need for additional Criminal Justice Act
10    funding to support a legal defense on to the conclusion of the
11    matter.  And explaining in more detail than has been done thus
12    far about how in the world an attorney, or even a pair of
13    attorneys could, given the time constraints of other pending
14    business and other pending trials, replicate the work that has
15    been done by one attorney in the course of 24 months in a mere
16    60 days, and still provide adequate representation, sufficient
17    to meet a *Strickland* standard, if challenged upon trial and
18    conviction, if that were to be the case.
19            I'm concerned, in other words, as a fundamental matter
20    underlying all of this, that to allow substitute counsel in at
21    this point, no matter how well experienced he or she may be,
22    and to essentially force the continuation of trial with the
23    massive amount of work that is necessary for preparation would
24    be to set up, first, well, first of all, to set up the
25    defendant for failure, so to speak, because of inadequate time
```

```
 1    for preparation.  Or if not that, to set up a 2255 petition
 2    post-conviction with, with at least the allegation, if not the
 3    reality of ineffective assistance due to insufficient time for
 4    preparation.  There is, there is an absolutely inherent and I
 5    think unavoidable problem in that regard, probably unavoidable.
 6    But I remain to be perhaps persuaded.
 7            If you'll file that by Friday, I'll look at it, Mr.
 8    Pitts.  And thank you.  I have nothing further.
 9            Ms. Stout, you have something further.  Ms. Stout?
10            MS. STOUT:  I'm sorry, your Honor, just two quick
11    things.  I'm very hesitant in what my role should be at this
12    point in terms of work, because things keep coming in and
13    e-mails keep crossing my computer.  And there's 7,200 pages
14    there.  And there's things I think my client should have.
15            THE COURT:  I think that you should, you should
16    continue to perform, having not been relieved of any
17    responsibilities at this point.  You are counsel of record, and
18    so you remain unless and until I order otherwise.
19            MS. STOUT:  Okay.  And one last thing, your Honor.
20    Thank you for that clarification.  One last thing is I know
21    that, and I'll just say it again here, because it's come up so
22    many times with respect to Mr. Witort, is his concern for a
23    speedy trial.  And I believe that one of his, his, his concerns
24    I believe I, I did sign the first stipulation, and after that,
25    I believe I filed a notice for speedy trial.  And as your Honor
```

MOTION HEARING - 7/9/2014

1    knows, I filed a bond motion with an alternative for dismissal

2    because of speedy trial issues.  I know that there is some, I

3    don't know if that is a conflict between us about that very

4    initial adjournment or not, but I just thought I should bring

5    that to the Court's attention, because he has specifically

6    mentioned --

7            THE COURT:  Well, for the benefit of your client, I

8    can assure you that the adjournment would have been granted

9    with or without his consent, because of the complexity of the

10   trial.  This case has been designated by judicial determination

11   as an exceedingly complex case.

12           It's, it's obvious that the lengths we've gone to

13   provide this information, for example, to defendants, including

14   this one, is almost unheard of.  It's exceedingly rare, let's

15   just put it that way, exceedingly rare.  The number of

16   defendants, the number of defense attorneys, the staffing

17   support that has been required, the attorneys they've had to

18   bring in, one of whom his name escapes me now.  Mister?

19           MR. NAUGHTON:  Naughton, your Honor.

20           THE COURT:  Naughton, who has been brought in not as

21   an attorney but as a technical advisor, at the request of

22   multiple number of attorneys who are not as adept as others may

23   be with respect to operating an iPad, or searching files,

24   optimizing PDFs and things of that sort.  The complexities of

25   this case have been remarkable.

```
 1              This case would have been continued with or without
 2     your stipulation, Ms. Stout, or your client's agreement.  If he
 3     had disagreed and vehemently objected and said to the contrary
 4     at the initial opportunity to agree with a substitution -- with
 5     a continuation, it would have been continued.  Of course you
 6     know that.  I'm stating this for his benefit here, because here
 7     he is listening.
 8              All right.  Anything else, Ms. Stout?
 9              MS. STOUT:  No.
10              THE COURT:  I intend to have this matter decided
11     rapidly, so that you'll have -- you'll know whether you are
12     either continuing or not continuing.  And I'll take Mr. Pitts'
13     comments by Friday noon, please.  All right?
14              MS. STOUT:  Thank you, your Honor.
15              THE COURT:  That's all.  Thank you.
16              MR. PITTS:  What was the last thing you said?  You'll
17     take my comments by?
18              THE COURT:  Friday noon.
19              MR. PITTS:  By Friday at noon.
20              THE COURT:  Noon time.
21              MR. PITTS:  Okay.
22              THE COURT:  As opposed to midnight.  Okay.
23              MR. PITTS:  Thank you.
24              THE CLERK:  All rise.  Court is now in recess.
25              (Proceedings adjourned at 3:15 p.m.)
```

1                          *        *        *

2

3                    **CERTIFICATE OF REPORTER**

4

5          As an official court reporter for the United States

6   District Court, appointed pursuant to provisions of Title 28,

7   United States Code, Section 753 I do hereby certify that the

8   foregoing is a correct transcript of the proceedings in the

9   above-entitled cause on the date hereinbefore set forth.

10

11

12                   s/ Christin E. Russell

13          CHRISTIN E. RUSSELL, RMR, CRR, FCRR, CSR

14                 Federal Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25